EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br><br>Carmen T. Saliceti Maldonado<br>(TS-7,651) | 2023 TSPR 91<br><br>212 DPR ___ |

Número del Caso: AB-2021-0189

Fecha: 10 de julio de 2023

Oficina de Inspección de Notarías:

Lcdo. Manuel E. Ávila De Jesús
Director

Abogada de la promovida:

Por derecho propio

Materia: Conducta Profesional – Suspensión inmediata e indefinida de la práctica de la notaría por incumplir con los Arts. 2, 14 y 15(f) de la Ley Notarial de Puerto Rico; las reglas análogas del Reglamento Notarial; los Arts. 130, 131 y 240 de la Ley de Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, y los Cánones 18 y 35 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carmen T. Saliceti Maldonado       AB-2021-0189
        (TS-7,651)

*PER CURIAM*

En San Juan, Puerto Rico, a 10 de julio de 2023.

Hoy ejercemos nuestra facultad disciplinaria y suspendemos de manera indefinida e inmediata del ejercicio de la notaría a la Lcda. Carmen T. Saliceti Maldonado por incumplir con los artículos 2, 14 y 15 (f) de la *Ley Notarial de Puerto Rico*, infra, sus reglas análogas en el Reglamento Notarial, los artículos 130, 131 y 240 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, infra, y los Cánones 18 y 35 del Código de Ética Profesional, infra. Además, ordenamos a la letrada que realice y sufrague las gestiones necesarias para viabilizar la inscripción de la Escritura Núm. 2 de 4 de febrero de 2020 en el Registro de la Propiedad,

Sección Segunda de Ponce. Asimismo, le concedemos un término de veinte (20) días para que muestre causa por la cual este Tribunal no debe suspenderla del ejercicio de la abogacía.

A continuación, resumimos los hechos que dieron paso a esta acción disciplinaria.

I

La Lcda. Carmen T. Saliceti Maldonado (licenciada Saliceti Maldonado o promovida) fue admitida al ejercicio de la abogacía el 6 de junio de 1983 y al ejercicio de la notaría el 10 de agosto de 1983.[1]

La licenciada Saliceti Maldonado autorizó la Escritura Núm.2 de 4 de febrero de 2020 (Escritura Núm. 2) con el fin de llevar a cabo la compraventa de la Finca Núm. 10,845 situada en el Municipio de Yauco. En esta, la Sra. Alida Feliciano García compareció como parte compradora, y la Sra. Magda Ivette Corales Casiano, por sí y en representación del Sr. Neftalí Corales Casiano, compareció como parte vendedora. Ambos vendedores eran integrantes de las sucesiones del Sr. Emilio Casiano Cruz y la Sra. Enriqueta Lugo López, junto a otros múltiples herederos que no comparecieron en esta escritura de compraventa.[2] La Finca Núm. 10,845 pertenecía a la comunidad

---

[1] Los protocolos de instrumentos públicos elaborados durante su práctica notarial están inspeccionados y aprobados hasta el año natural 2020. El examen de su obra protocolar formada en el año natural 2021 no ha podido ser aprobada por subsistir señalamientos relacionados con dos instrumentos públicos que se relacionan con la queja objeto de este pronunciamiento. En cuanto a su Libro de Registro de Testimonios, se encuentra examinado y aprobado hasta el Asiento Número 7,643 del 28 de marzo de 2022.

[2] Cabe resaltar que la licenciada Saliceti Maldonado realizó los trámites notariales de la Sucesión Casiano Cruz a partir del 27 de abril de 2017, fecha en la que autorizó la Escritura Núm. 20 sobre Liquidación, Partición y Adjudicación de Bienes Hereditarios (Escritura Núm. 20 de 2017), que será detallada más adelante.

hereditaria de la Sucesión Casiano Cruz.

De este negocio jurídico surge la queja que aquí nos ocupa. El 22 de febrero de 2022 el Sr. Abraham Rivera Feliciano (señor Rivera Feliciano o promovente), hijo de la señora Feliciano García, se quejó en contra de la licenciada Saliceti Maldonado. El señor Rivera Feliciano alegó que la letrada autorizó la Escritura Núm. 2 de 2020 y le facturó $375.00. No obstante, después de aproximadamente cuatro (4) a cinco (5) meses desde que se otorgó la escritura, el señor Rivera Feliciano acudió al Registro de la Propiedad Inmobiliaria, Sección de Ponce (Registro), y advino en conocimiento de que la escritura de compraventa aún no constaba presentada. El promovente adujo que cuando acudió al Registro por segunda ocasión, le entregaron una carta de la cual surgía una segunda notificación de faltas.[3] El referido documento establecía las faltas que impidieron la inscripción de la Escritura Núm. 2 de 2020. Según el promovente, la letrada tenía pleno conocimiento de las referidas deficiencias.

El señor Rivera Feliciano afirmó que, al enterarse de las deficiencias, intentó comunicarse con la licenciada Saliceti Maldonado en varias ocasiones mediante medios distintos, tales como llamadas telefónicas, textos y mensajes de correo electrónico, sin éxito alguno.[4] Según el promovente, tras

---

[3] El señor Rivera Feliciano alegó que nunca recibió la primera notificación de deficiencias ni por parte del Registrador ni por conducto de la licenciada Saliceti Maldonado.

[4] El señor Rivera Feliciano alegó que, ante la imposibilidad de comunicarse con la licenciada Saliceti Maldonado, el 8 de noviembre de 2021 le pidió a una amiga que la llamara desde su teléfono celular personal y en esa ocasión la letrada sí contestó la llamada.

finalmente comunicarse con la notaria, esta le expresó que debía esperar, que no debía continuar molestando, que no necesitaba contar con el documento inscrito, y que, cuando pudiera conseguir las personas que necesitaba para ratificar otros dos instrumentos públicos necesarios para inscribir la Escritura Núm. 2 de 2020, este podría presentar su documento ante el Registro.[5] Como explicaremos a continuación, esos dos documentos, autorizados por la licenciada Saliceti Maldonado, eran la Escritura Núm. 20 de 27 de abril de 2017 sobre *Liquidación, Partición [y] Adjudicación de Bienes Hereditarios* y la Escritura Núm. 11 de 17 de mayo de 2019 sobre *Modificación de Partición de Bienes* Hereditarios, ambos correspondientes a la Sucesión Casiano Cruz. El señor Rivera Feliciano expuso que cuando le indicó a la licenciada Saliceti Maldonado que los documentos fueron retirados del Registro por sus deficiencias y que por esto tendría que adquirir comprobantes nuevos, esta le manifestó que tal situación no era su problema. Por último, indicó que para la fecha en que presentó su queja, la licenciada Saliceti Maldonado continuaba evitando sus llamadas y no había recibido información sobre los señalamientos del Registro y el estatus de la Escritura Núm. 2 de 2020.

El 25 de enero de 2022 la licenciada Saliceti Maldonado contestó la queja. Argumentó que el señor Rivera Feliciano no era parte en la Escritura Núm. 2 de 2020 y que en cambio, era

---

[5] Sostuvo que, desde ese momento, las veces que sí pudo comunicarse con la letrada, esta le respondió molesta haciéndole expresiones como: "t[ú] fastidias mucho"; "no molestes más"; "espera que yo pueda"; "no me hagas perder el tiempo". Queja AB-2021-0189, pág. 2.

su madre, la señora Feliciano García, quien compareció como compradora, la que en todo caso podía presentar la referida queja. Además, manifestó que nunca le facturó al promovente la cantidad de $375.00 ya que fue la señora Corales Casiano quien la contrató como parte de la Sucesión Casiano Cruz y fue ella quien le entregó el dinero para la escritura de compraventa.

Por otra parte, expuso que en las advertencias que esbozó en la Escritura Núm. 2 de 2020, fue clara en apercibir que, para que la escritura de compraventa pudiera inscribirse, había que presentar antes varios documentos correspondientes a las Sucesiones Casiano Cruz y Lugo López. **Especificó que en sus advertencias incluyó que la inscripción solo podría ocurrir luego de que quedara inscrita la Escritura Núm. 11 sobre** *Modificación de Partición de Bienes Hereditarios* **de 17 de enero 2020** (Escritura Núm. 11 de 2020).

Con respecto a la falta de comunicación, la promovida indicó que no conocía el número de teléfono del promovente, que no recibió sus llamadas y que, si en efecto llegó a hablar con él, no lo recordaba. Afirmó que no se sentía molesta por sus llamadas ni le realizó las expresiones que este alegó.

Sobre el señor Rivera Feliciano, la promovida adujo que cuando se comunicó con los miembros de ambas sucesiones en torno a esta queja, le expresaron que el señor Rivera se apoderó de una finca de 18 cuerdas de una de las sucesiones. Insistió en que todos los miembros de ambas sucesiones, compuestas en total de unos veintidós (22) herederos, conocían de los problemas que existían y que el promovente se equivocaba cuando

asumía que ella tenía la obligación de notificarle todas las gestiones realizadas para las dos sucesiones, lo cual ella indicó que era incorrecto.

Así las cosas, referimos la queja a la Oficina de Inspección de Notarías (ODIN) para que realizara la investigación de rigor y rindiera el informe correspondiente. En respuesta a los requerimientos de información que la ODIN cursó como parte de su encomienda, el señor Rivera Feliciano sostuvo que nadie residía en la propiedad inmueble objeto de la compraventa, pues se trataba de una finca; que no tenía el recibo del pago efectuado a la notaria, ya que se realizó en efectivo, y que no se formalizó un contrato de servicios profesionales sobre la compraventa.[6]

El 1 de junio de 2022, la ODIN le cursó una carta a la licenciada Saliceti Maldonado solicitando que enviara copia certificada de todas las escrituras, actas de rectificación y subsanación, y documentos pertinentes a la queja en su contra. La notaria proveyó, mediante tres correos electrónicos, múltiples escrituras relacionadas con las Sucesiones Casiano Cruz y Lugo López, así como otros documentos relacionados.[7]

---

[6] Además, el señor Rivera Feliciano incluyó la Escritura Núm. 12 sobre *Poder Duradero* de 27 de abril de 2022 otorgada ante el notario Ramón Antonio Moreno Berríos, mediante la cual su madre, la señora Feliciano García, lo designó como su apoderado. Aclaró que aparte de esto, no sostenía relación alguna con la licenciada Saliceti Maldonado ni con los demás otorgantes. Añadió que el propósito con la presentación de la Queja era que la titularidad de la propiedad objeto de la compraventa se inscribiera en los tomos del Registro; lo que no se había materializado debido a unas faltas que la licenciada Saliceti Maldonado no había corregido.

[7] Entre otras, remitió copias de las escrituras siguientes: (1) Escritura Núm. 4 de 3 de febrero de 2022, sobre Devolución de Participación en Bien Hereditario de la Sucesión de Emilio Casiano Cruz; (2) Escritura Núm. 9 de 10 de marzo de 2022, sobre Adjudicación en Bien Hereditario de la Sucesión de Emilio Casiano Cruz; (3) Escritura Núm. 11 de 25 de marzo de 2022, sobre Devolución de Participación en Bien Hereditario y Aceptación de

El 13 de octubre de 2022 la licenciada Saliceti Maldonado le envió otro correo a la ODIN expresando que el 7 de septiembre de 2022 suscribió una carta dirigida al Registrador solicitando la inscripción del negocio jurídico recogido en la Escritura Núm. 11 de 17 de mayo de 2019 sobre *Modificación o Partición de Bienes Hereditarios* (Escritura Núm. 11 de 2019), con respecto a la Finca Número 10,845. Según su carta, esto viabilizaría que el negocio jurídico esbozado en la Escritura Núm. 2 de 2020 lograra acceso a los tomos del Registro. También informó que dos integrantes de la Sucesión Casiano Cruz, la Sra. Emilia Casiano Malavé y el Sr. Enrique Casiano Lugo, habían fallecido el 2 de febrero de 2022 y el 27 de julio de 2022, respectivamente. Sostuvo que, por tanto, mientras los herederos no encaminaran los procesos correspondientes a los fallecimientos de estos herederos, no podría autorizar el instrumento público requerido por el Registrador para rectificar y ratificar los negocios jurídicos previos. Añadió que tampoco conocía si le iban a ser requeridos sus servicios profesionales para este nuevo trámite.

El 20 de diciembre de 2022 recibimos el Informe de la ODIN.[8] En síntesis, aseveró que la licenciada Saliceti

---

Participación en Otro Bien Hereditario de la Sucesión de Ramón Casiano Bonilla (heredero de Emilio Casiano Cruz); (4) Escrituras Núm. 13, 14, y 15 de 10 de abril de 2022 sobre Adjudicación en Bien Hereditario de la Sucesión de Emilio Casiano Cruz; (5) Escritura Núm. 16 de 10 de abril de 2022, sobre Devolución de Participación en Bien Hereditario de la Sucesión de Emilio Casiano Cruz; (6) Escritura Núm. 17 de 29 de abril de 2022, sobre Adjudicación de Bien Hereditario de la Sucesión de Emilio Casiano Cruz, y (7) Escritura Núm. 18 de 2 de mayo de 2022, sobre Adjudicación de Participación en Bien Hereditario de la Sucesión de Emilio Casiano Cruz.
[8] Resaltamos que la licenciada Saliceti Maldonado no replicó el *Informe* de la ODIN.

Maldonado presentó la Escritura Núm. 20 de 2017, en la que comparecieron los integrantes de la Sucesión Casiano Cruz, quienes acordaron liquidar el caudal hereditario mediante la distribución, partición y adjudicación de los bienes inmuebles descritos en el instrumento público. Conforme al negocio jurídico que se quería realizar, se relacionaron los nombres de los herederos a los cuales se le adjudicaba cada finca. Entre las fincas que se incluyeron se encontraba la finca cuya compraventa es la razón de esta queja, la Finca Núm. 10,845 ubicada en Yauco.[9] Según surge de un texto añadido al final de una copia certificada del documento que se presentó en el Registro, se desprendía que ni **el señor Neftalí Corales Casiano ni la señora Magda Corales Casiano suscribieron la Escritura Núm. 20 de 2017. Ello, a pesar de estos haber sido incluidos en el instrumento público como otorgantes.**[10] Además, la promovida acompañó una carta con fecha de 22 de mayo de 2018, mediante la cual le solicitó al Registrador que limitara la inscripción de este asiento de presentación para que, de las doce fincas descritas, solo se calificaran e inscribieran las transacciones relacionadas con las Fincas Número 4604 y Número 17,846, sitas en el Municipio de Yauco.[11]

La ODIN añadió que el 17 de mayo de 2019 la licenciada

---

[9] En específico, la adjudicación de la Finca Núm. 10,845 de Yauco se realizó a los siguientes co-herederos de la Sucesión Casiano Cruz: Sr. Emilio Casiano Lugo; Sra. Violeta Casiano Lugo; Sra. Marilyn Casiano Lugo; Sr. José Andrés Casiano Malavé; Sr. José Emilio Casiano Torres; Sr. Francis Santiago Casiano, y Sr. Neftalí Corales Casiano.

[10] El señor Neftalí Corales Casiano y la señora Magda Corales Casiano eran miembros de la Sucesión Casiano Cruz por lo que su comparecencia era imprescindible para que el negocio jurídico surtiera efecto.

[11] Ambas transacciones fueron inscritas en los tomos del Registro el 6 de agosto de 2018.

Saliceti Maldonado autorizó la Escritura Núm. 11. de 2019. En esta expresó que los herederos allí comparecientes deseaban modificar la adjudicación de algunas fincas, incluyendo la Finca Núm. 10,845, que se realizó originalmente en la Escritura Núm. 20 de 2017. Con respecto a la Finca Número 10,845, expresó que se adjudicaba esta a favor del señor Neftalí Corales Casiano y la señora Magda Ivette Corales Casiano. Tal instrumento público no fue presentado en el Registro.

El 4 de febrero de 2020 la promovida autorizó la Escritura Núm. 2 de 2020 sobre compraventa de la Finca Número 10,845 de Yauco en la cual comparecieron como integrantes de la parte vendedora la señora Magda Ivette Corales Casiano y el señor Neftalí Corales Casiano, mientras que la señora Feliciano García, madre del promovente, compareció como parte compradora. En el instrumento público se expresó que los vendedores adquirieron la titularidad de la referida finca por herencia de sus abuelos según constaba en la Escritura Núm. 11 de 2019 autorizada por la licenciada Saliceti Maldonado. En el instrumento, se esbozó la siguiente advertencia:

> b- Se le informa a la parte compradora que para que pueda entrar esta escritura al Registro de la Propiedad hay que presentar antes varios documentos que corresponden a las sucesiones de Emilio Casiano Cruz y de Enriqueta Lugo López y luego de que quede inscrita la escritura once *(11)* sobre Modificación de Partición de Bienes Hereditarios de diecisiete de enero de dos mil veinte (2020) ante la Fedataria.

El 25 de marzo de 2021, luego de que la licenciada Saliceti Maldonado recibiera una primera notificación del Registrador con respecto a la Escritura Núm. 20 de 2017, la

promovida presentó esta escritura por segunda ocasión para su

oportuna calificación y despacho. Un día después, presentó **por

primera vez** ante el Registro la Escritura Núm. 11 de 2019 para

su oportuna calificación y despacho.[12]

Sobre este asunto, el 21 de junio de 2021, el Registrador

de la Propiedad emitió una notificación con relación a la

Escritura Núm. 2 de 2020. Expresó, en lo pertinente, lo

siguiente:

> La propiedad consta inscrita a favor de varios
> herederos mencionados en las inscripciones 2 a la 10.
> Surge de la inscripción 3ra. que la heredera María
> Magdalena Casiano Malavé adquirió una participación y su
> padre, Neftalí Corales Mercado, la cuota viudal
> usufructuaria. En el documento de epígrafe comparecen
> únicamente Magda Ivette Corales Casiano y Neftalí Corales
> Mercado como parte vendedora; dejando de comparecer más
> de una docena de herederos que surgen del registro.
>
> Surge del documento, en el hecho Primero, que
> adquirieron en virtud de la Escritura 11 de Modificación
> de Partición de Bienes Hereditarios de fecha 17 de mayo
> de 2019 ante la notari[a]. La misma no consta inscrita en
> el Registro.
>
> El documento tampoco especifica que se vende una
> participación abstracta, sino la totalidad del inmueble.
> Siendo ese el caso, tienen que comparecer TODOS los
> herederos que surgen del Registro a consentir la
> enajenación de toda la finca. La falta de consentimiento
> de los mismos, impide la inscripción del instrumento que
> nos ocupa por falta de tracto.[13]

Posteriormente, el 12 de octubre de 2021, el Registrador

emitió una notificación con relación a la Escritura Núm. 20 de

---

[12] Recordemos que la Escritura Núm. 11 de 2019 de *Modificación de Partición de Bienes Hereditarios* se otorgó para rectificar el hecho de que la licenciada Saliceti Maldonado excluyó a la señora Magda Ivette Corales Casiano y al señor Neftalí Corales Casiano de la Escritura Núm. 20 de 2017 sobre *Liquidación, Partición [y] Adjudicación de Bienes Hereditarios*. Por lo que, para propósitos del Registro, a la fecha en que se presentó la escritura de compraventa (Escritura 2 de 2020), estos no constaban como herederos de las sucesiones Casiano Cruz y Lugo López.
[13] Expediente de la Queja AB-2021-0189, pág. 41.

2017. Expresó, conforme a los requisitos del Art. 130 de la Ley Núm. 210-2015, según enmendada, *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico* (Ley del Registro de la Propiedad Inmobiliaria), 30 LPRA sec. 6185, lo siguiente:

1. Por el documento presentado se solicita la adjudicación de varias fincas. No obstante, se omite el por ciento de participación que corresponde a cada uno de los herederos. Debe presentar documento de Ratificación, en donde comparezcan cada uno de los herederos, a consentir al porciento que le sea adjudicado.

2. Posteriormente fueron presentados varios documentos a relacionarse.

El 12 de octubre de 2021 el Registrador notificó que, en cuanto a la Escritura Núm. 11 de 2019, estaba impedido de inscribirla por el asiento de la Escritura Núm. 20 de 2017 y el de la Escritura Núm. 2 de 2020, ya notificados. El 12 de octubre de 2021 el Registrador emitió una segunda notificación con relación a la Escritura Núm. 2 de 2020 presentada en la cual dispuso que estaba impedido de inscribirla por el documento previamente notificado al asiento de la Escritura Núm. 20 de 2017.

Consecuentemente, el día 16 de noviembre de 2021 los instrumentos públicos antes relacionados fueron retirados del Registro por la licenciada Saliceti Maldonado. La ODIN expuso que, con posterioridad a la presentación de la presente queja, la promovida procedió a autorizar las múltiples escrituras

pertinentes a las Sucesiones Casiano Cruz y Lugo López.[14]

El 8 de septiembre de 2022 la notaria presentó nuevamente ante el Registro la Escritura Núm. 11 de 2019. Como documentos complementarios, acompañó una comunicación con fecha del 7 de septiembre de 2022 dirigida al Registrador, en la cual solicitó limitar la inscripción a los fines de la transacción relacionada con la Finca Núm. 10,845 de Yauco. En su escrito expresó, además, que el 21 de octubre de 2021 le habían notificado deficiencias en la Escritura Núm. 11 de 2019, por omitir los por cientos de participación de cada heredero, sin reconocer que dicha omisión comenzó al otorgar la Escritura Núm. 20 de 2017.

Finalmente, sobre los instrumentos públicos detallados previamente, la ODIN confirmó que existían dos asuntos medulares que impedirán la calificación e inscripción de los negocios jurídicos. **En primer lugar, que en algunos de los negocios jurídicos la notaria omitió especificar el por ciento de participación adjudicado a cada parte otorgante que suscribe el instrumento. En segundo lugar, la ausencia en múltiples instrumentos públicos otorgados de partes que debían**

---

[14] (1) Escritura Núm. 4 sobre *Devolución de Participación en Bien Hereditario* de 3 de febrero de 2022; (2) Escritura Núm. 9 sobre *Adjudicación de Bien Hereditario* de 10 de marzo de 2022; (3) Escritura Núm. 11 sobre *Devolución de Participación en Bien Hereditario y Aceptación de Participación en Otro Bien Hereditario* de 25 de marzo de 2022; (4) Escritura Núm. 13 sobre *Adjudicación en Bien Hereditario* de 10 de abril de 2022; (5) Escritura Núm. 14 sobre *Adjudicación en Bien Hereditario* de 10 de abril de 2022; (6) Escritura Núm. 15 sobre *Adjudicación de Participación en Bien Hereditario* de 10 de abril de 2022; (7) Escritura Núm. 16 sobre Devolución de Participación en Bien Hereditario de 10 de abril de 2022; (8) Escritura Núm. 17 sobre *Adjudicación de Bien Hereditario* de 29 de abril de 2022; y (9) Escritura Núm. 18 sobre *Adjudicación de Partición en Bien Hereditario* de 2 de mayo de 2022.

**suscribirlos; ello, según se aprecia tanto en la Escritura Núm. 20 de 2017 como en la Escritura Núm. 11 de 2019.** La ODIN afirmó que este hecho es corroborable ya que catorce (14) de los coherederos no suscribieron los instrumentos públicos necesarios para formalizar estos negocios jurídicos. Además, la Escritura Núm. 11 de 2019 no constaba examinada, calificada e inscrita en los tomos electrónicos del Registro y tampoco surgía que se hubieran presentado nuevamente ante tal dependencia los negocios jurídicos instrumentados en las escrituras Núm. 20 de 2017 y Núm. 2 de 2020.

Ante este panorama, la ODIN razonó que la conducta de la licenciada Saliceti Maldonado resultaba en múltiples violaciones a la *Ley del Registro de la Propiedad Inmobiliaria*, supra, y la Ley Núm. 75 de 2 de julio de 1987, *Ley Notarial de Puerto Rico*, según enmendada, 4 LPRA 2001-2142 (*Ley Notarial*), y su Reglamento, y el Código de Ética Profesional, 4 LPRA Ap. IX.

En específico, planteó que la licenciada Saliceti Maldonado violó los artículos 130, 131 y 240 *de Ley del Registro de la Propiedad Inmobiliaria*, supra.[15] La ODIN explicó

---

[15] Estos artículos disponen lo siguiente:

> **Comunidad Hereditaria** - La inscripción de los bienes que comprenden el caudal relicto de un causante a favor de la sucesión, constituye una cotitularidad universal sobre la masa de bienes relictos. Cuando se trate de bienes gananciales, éstos constituyen una comunidad de bienes en abstracto sobre la masa que perteneció a la extinta sociedad de gananciales entre el cónyuge sobreviviente y los herederos. Una comunidad hereditaria comprende la titularidad de una o varias fincas y demás bienes del caudal relicto del causante a favor de todos sus miembros sin que

hayan sido establecidas las participaciones específicas que corresponden a cada coheredero. Artículo 130, *Ley del Registro de la Propiedad Inmobiliaria*, 30 LPRA sec. 6185.

**Inscripción de participaciones específicas; partición y adjudicación de comunidad hereditaria** - Mientras no se haya realizado la partición y adjudicación de la herencia, aún en aquellos casos en que se trate de un solo bien o aunque la cuota de cada heredero pueda determinarse, solamente podrá inscribirse a favor de cada heredero su derecho hereditario sobre una participación abstracta e indivisa en el caudal relicto. También podrá inscribirse el derecho a la cuota usufructuaria, cuando se determina que hay un cónyuge sobreviviente. La inscripción de participaciones específicas a favor de cada comunero se practicará en virtud de resolución judicial final y firme o escritura pública con la comparecencia y consentimiento de todos los herederos y legatarios si los hubiera, a la partición y adjudicación de todo o parte del caudal. El consentimiento del cónyuge supérstite es indispensable para la validez de las operaciones particionales mientras no haya habido conversión o liquidación del usufructo viudal. Cuando se trate de heredero único, el documento de la sucesión equivaldrá a la adjudicación a los efectos de inscribir directamente a favor de dicho heredero los derechos que aparezcan a nombre del causante. Sólo se podrán inscribir enajenaciones o gravámenes sobre cuotas específicas cuando éstas hayan sido previamente adjudicadas. La adjudicación no será necesaria en las siguientes circunstancias:

1. Cuando comparecen todos los coherederos o interesados a enajenar o gravar la totalidad de su derecho hereditario a favor de un tercero.

2. Cuando todos los coherederos o interesados venden la totalidad de su derecho hereditario a favor de un comunero soltero o casado bajo el régimen de separación de bienes.

3. Cuando uno o más de los coherederos transfiere su derecho hereditario o participación abstracta e indeterminada en la totalidad de la herencia.

4. Cuando una persona haya adquirido todos los derechos hereditarios. Artículo 131, *Ley del Registro de la Propiedad Inmobiliaria*, 30 LPRA sec. 6186.

**Responsabilidad del notario por omisiones o defectos; notificación** - El notario o funcionario que por su falta cometa alguna omisión que impida inscribir el acto o contrato contenido en el documento presentado, conforme lo dispuesto en la ley, subsanará prontamente y a su costo al ser requerido mediante notificación. De ser necesario y posible, extenderá un nuevo documento. Todo notario cuyo documento sea notificado en tres ocasiones por los mismos defectos sin que se corrijan los mismos, podrá ser referido por el

que tales infracciones se desprendían de las notificaciones de deficiencias que recibió la licenciada Saliceti Maldonado con respecto a la ausencia de los datos relacionados con los por cientos de participación en un proceso de adjudicación, y la partición hereditaria en un instrumento público. Además, enfatizó que la promovida no le explicó de manera clara y precisa a este Tribunal el por qué encaminó el proceso de avalúo, adjudicación y partición hereditaria, sin la existencia de un contador partidor o cuaderno particional como marco de referencia. Por último, el brazo investigativo de este Tribunal señaló que, a la fecha de presentar su Informe, la licenciada Saliceti Maldonado aún no había corregido las faltas señaladas por el Registrador de la Escritura Núm. 20 de 2017, de cuya inscripción también dependía la Escritura Núm. 11 de 2019, por ella autorizada, para establecer el tracto registral que permitiera la oportuna calificación de la Escritura Núm. 2 de 2020, en directa contravención con lo requerido por el artículo 240 de la *Ley del Registro de la Propiedad Inmobiliaria*, supra.

Con respecto a la *Ley Notarial*, supra, y al *Código de Ética Profesional*, supra, la ODIN expresó que durante el proceso de investigación identificó crasas violaciones, tanto a los

---

Registrador vía correo electrónico a la Oficina de Inspección de Notarías para la acción correspondiente. Dicho referido se efectuará simultáneamente con la tercera notificación. Artículo 240, *Ley del Registro de la Propiedad Inmobiliaria*, 30 LPRA sec. 6392.

Artículos 2, 14 y 15 (f) de la *Ley Notarial*, <u>supra</u>, como a los Cánones 18 y 35 del *Código de Ética Profesional*, <u>supra</u>. Como ejemplo, la ODIN encontró una comunicación de la promovida con fecha del 22 de mayo de 2018 dirigida al Registrador que atendió en aquel entonces la presentación original del negocio esbozado en la Escritura Núm. 20 de 2017. En esta, la licenciada Maldonado Saliceti indicó que reconocía la existencia de problemas que impedirían la inscripción de los negocios jurídicos notificados sobre varias fincas allí relacionadas, incluyendo la Finca Núm. 10,845 de Yauco. Así, la promovida le solicitó al Registrador que de la escritura que acababa de presentar ante el Registro se limitara el asiento a lo concernido con otras dos fincas, quedando excluidos los asuntos de la Finca Núm. 10,845 y otras múltiples fincas consignadas en la Escritura Núm. 20 de 2017. Por lo tanto, la promovida conocía los problemas que enfrentaría la inscripción de la Escritura Núm. 20 de 2017 y aun así optó por presentarla ante el Registro. Adicionalmente, teniendo pleno conocimiento que los errores mencionados implicaban la nulidad de la Escritura Núm. 2 de 2020, guardó silencio y omitió orientar adecuadamente a las partes otorgantes de este último, en particular, a la parte compradora.

Por estos hechos, la ODIN nos recomendó que: (1) decretáramos la suspensión inmediata e indefinida del ejercicio de la notaría de la licenciada Saliceti Maldonado;[16]

---

[16] En la alternativa, recomendó la suspensión de la licenciada Saliceti Maldonado por el término de un año del ejercicio de la notaría.

(2) ordenáramos a la promovida realizar y sufragar las gestiones necesarias para viabilizar la inscripción de la Escritura Núm. 2 de 2020 en el Registro, y (c) emitiéramos cualquier otro remedio que en Derecho procediera.

Expuesto el trasfondo fáctico, procedemos a esbozar el derecho aplicable.

## II

La profesión notarial se caracteriza por tener la función de ofrecer legitimidad a los negocios jurídicos facilitando así el tránsito y desarrollo económico en la isla. In re González Maldonado, 152 DPR 871 (2000). "Nuestra Ley Notarial sigue esta concepción al preceptuar que el notario es el 'único funcionario autorizado para dar fe y autenticidad, conforme a las leyes, a los contratos y demás actos extrajudiciales que ante su presencia se realicen'". In re Feliciano Ruiz, 117 DPR 269, 274 (1986). Véase también: Artículo 2, *Ley Notarial,* supra;

"Debido a [su] importancia dentro del tráfico jurídico de bienes, el notario tiene que ser en extremo cuidadoso, así como desplegar sumo esmero y celo en su desempeño profesional". In re González Maldonado, supra, pág. 896. Tal responsabilidad ha arraigado unos preceptos legales y éticos que exigen el cumplimiento con las disposiciones pertinentes para que los negocios jurídicos que autorice un notario o notaria "estén dentro del estándar adecuado para que sean válidos y efectivos". In re González Pérez, 208 DPR 632, 649 (2022). Es a tenor de esto que hemos reiterado cuán altamente

regulado es este oficio y el deber que tienen todos y todas aquellas que lo practican de atenerse a los más altos estándares de calidad. Íd.

El celo y cuidado de todo notario o notaria en su función como otorgante de negocios jurídicos, "debe desplegarse antes, durante y después de otorgar el instrumento público para asegurar que este no adolece de faltas o defectos que impidan su inscripción registral". In re Pacheco Pacheco, 192 DPR 553, 562 (2015); In re Godínez Morales, 161 DPR 219, 249 (2004). **"Una vez el notario se percate de algún defecto u omisión en la escritura o el Registrador de la Propiedad lo señale, corresponderá al notario observar prontamente los mecanismos que la ley provee para su corrección"**. In re Godínez Morales, supra, págs. 249-250 (Énfasis suplido). Siendo así, cualquier incumplimiento con las disposiciones estatutarias que regulan la profesión notarial, a saber, *la Ley Notarial*, supra, y su Reglamento, "exponen a un notario [o notaria] a sanciones disciplinarias graves. Esto, en atención a que no acatar rigurosamente [tales] exigencias constituyen una falta grave a los deberes que la fe pública notarial impone al notario". In re Cabrera Acosta, 193 DPR 461, 466 (2015); véase In re Santiago Ortiz, 191 DPR 950, 959 (2014); In re Da Silva Arocho, 189 DPR 888, 892 (2013). Véase además: In re Miranda Casasnovas, 175 DPR 774, 778 (2009).

El Artículo 2 de la Ley Notarial, 4 LPRA sec. 2002, consagra el principio de la fe pública notarial y los deberes que cementan los pilares fundamentales que todo notario o notaria

debe cumplir. Este Tribunal se pronunció recientemente sobre tales deberes estableciendo que **el notario o notaria debe conocer el derecho aplicable y asesorar a su cliente de manera diligente**. In re Santiago Maldonado, 206 DPR 1029, 1047 (2021). Más aún, tal responsabilidad incluye mantener su obligación de autorizar instrumentos públicos que sean inscribibles en el Registro. Íd. Actuar en contra de tal proceder infringe el Artículo 2 de la Ley Notarial, supra, así como sus Artículos 14 y 15, 4 LPRA secs. 2032-2033,[17] ya que resultaría en una violación al "deber de velar por la legalidad de los instrumentos públicos ante él [o ella] autorizados".

Por otro lado, debido al peritaje en derecho que se requiere en el ejercicio de la función notarial, como principio, "todo notario está inexorablemente vinculado al cumplimiento estricto [...] [de los] [C]ánones del Código de Ética Profesional". In re Vázquez Margenat, 204 DPR 968, 977 (2020); In re Vázquez Pardo, 185 DPR 1031, 1040 (2012). Tanto es así,

---

[17] En específico, el Artículo 14 de la Ley Notarial pronuncia que "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y **adaptándola a las formalidades jurídicas necesarias para su eficacia**". 4 LPRA sec. 2032. Por otro lado, el Artículo 15 de la referida ley expresa lo siguiente:

La escritura pública, en adición al negocio jurídico que motiva su otorgamiento y sus antecedentes y a los hechos presenciados y consignados por el notario en la parte expositiva y dispositiva, contendrá lo siguiente:
[…]

(f) El haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, **se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente**. 4 LPRA sec. 2033 **(Énfasis suplido)**.

que cualquier incumplimiento con el *Código de Ética Profesional*, supra, que amerite una suspensión del ejercicio de la abogacía, resultará en una suspensión concurrente del ejercicio de la notaría.

Por último, todo notario o notaria debe cumplir no solo con los postulados de la Ley Notarial, supra y su Reglamento, sino además con los Cánones de Ética Profesional los cuales gobiernan el ejercicio de la abogacía. En lo pertinente, el Canon 18 del Código de Ética Profesional, supra, declara que "[s]erá impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". "Así, cuando un abogado acepta la encomienda de representar a una persona y no la ejecuta adecuada y responsablemente, infringe el Canon 18". In re Nazario Díaz, supra, pág. 636; In re Cotto Luna, 187 DPR 584, 588-589 (2012). Además, el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, resalta el deber de un abogado de ser sincero y honrado. En lo concerniente, hemos señalado "como contraria a este precepto la conducta de un abogado que oculta a su cliente la realidad jurídica de lo sucedido con el asunto que le fue encomendado, haciéndole falsas representaciones de que estaba trabajando en el mismo, a sabiendas de que ello no era así". In re Crespo Pendás, 2023 TSPR 31 (2023); In re Rivera Lozada, 176 DPR 215, 226 (2009).

**III**

Ante la responsabilidad de esta Curia de reglamentar la profesión legal y notarial, evaluamos los hechos de esta queja así como la evidencia recopilada, con el fin de determinar si la licenciada Saliceti Maldonado incurrió en violaciones a los Artículos 2, 14 y 15 (f) de la *Ley Notarial*, supra; sus reglas análogas en el Reglamento Notarial; a los Artículos 130, 131 y 240 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*; así como a los Cánones 18 y 35 del Código de Ética Profesional en el ejercicio de sus funciones notariales. **Coincidimos con el análisis realizado por la ODIN y concluimos que la licenciada Saliceti Maldonado incumplió con sus obligaciones y deberes.**

La queja contra la notaria, en su origen, planteaba la falta de inscripción de la Escritura 2 de 2020 sobre la compraventa de la Finca Núm. 10,845. **Ahora, las deficiencias que impedían su inscripción revelaron múltiples infracciones, incumplimientos y negligencias crasas con respecto a los instrumentos públicos que autorizó la notaria para las Sucesiones Casiano Cruz y Lugo López.**

Desde el momento en que la licenciada Saliceti Maldonado autorizó la Escritura Núm. 20 de 2017, para la distribución, partición y adjudicación de los bienes inmuebles descritos en el instrumento público, esta omitió contar con la totalidad de los integrantes de las Sucesiones Casiano Cruz y Lugo López para autorizar la referida escritura. Esta deficiencia resultó en la nulidad del documento desde su autorización y de todo

documento que autorizara algún negocio jurídico con relación a esta ineficaz partición de herencia. Véase: Artículo 131 de la Ley Núm. 210-2015, 30 LPRA sec. 6186.[18]

A pesar de esto, posteriormente la notaria autorizó la Escritura Núm. 11 de 2019, sobre *Modificación de Partición de Bienes Hereditarios*, la cual contemplaba, entre otras propiedades, la Finca Núm. 10,845, que fue ulteriormente objeto del negocio jurídico sobre compraventa esbozado en la Escritura Núm. 2 de 2020. Esta escritura reconocía la *alegada adjudicación* de esta finca a los herederos Neftalí Corales Casiano y Magda Ivette Corales Casiano y los identificaba como vendedores del bien inmueble. Pese a que estos últimos comparecieron como cotitulares del bien inmueble objeto de la transacción, **la realidad es que la adjudicación del referido inmueble en la Escritura Núm. 11 de 2019 no era jurídica y registralmente correcta; ello, por carecer de tracto registral para viabilizar su inscripción debido a la ineficacia del documento originario de este asunto, la Escritura Núm. 20 de 2017.**

De un análisis de las escrituras autorizadas por la notaria Saliceti Maldonado con respecto a las Sucesiones Casiano Cruz

---

[18] El Artículo 131 dispone:

> Mientras no se haya realizado la partición y adjudicación de la herencia, aún en aquellos casos en que se trate de un solo bien o aunque la cuota de cada heredero pueda determinarse, solamente podrá inscribirse a favor de cada heredero su derecho hereditario sobre una participación abstracta e indivisa en el caudal relicto. Artículo 131, *Ley del Registro de la Propiedad Inmobiliaria*, 30 LPRA sec. 6186.

y Lugo López se desprende un desconocimiento amplio de la otorgación de negocios jurídicos con respecto al Derecho Sucesorio. La notaria autorizó más de una decena de instrumentos públicos en el 2022 para atender las diversas notificaciones de deficiencias hechas por el Registrador, cuando el trámite solo requería otorgar un solo instrumento público que atendiera de manera completa y ordenada tales señalamientos. Además, los errores que cometió incidieron en la autenticidad de las Escrituras Núm. 20 de 2017 y Núm. 11 de 2019, respectivamente, lo cual afectó de forma directa la transacción instrumentada en la escritura en controversia: la Escritura Núm. 2 de 2020. Al presente existen instrumentos públicos que no han sido suscritos por la totalidad de los integrantes que componen ambas sucesiones ni se han presentado ante el Registro para su oportuna calificación.

Por otra parte, a pesar de que la notaria alegó que no tenía conocimiento sobre las deficiencias de los instrumentos públicos cuando los presentó ante el Registro para su inscripción, en la plataforma KARIBE del Registro Inmobiliario Digital, consta una comunicación de la notaria con fecha del 22 de mayo de 2018 y dirigida al Registrador que atendió en aquel entonces la presentación del negocio esbozado en la Escritura Núm. 20 de 2017. En esta indicó que reconocía la existencia de problemas que impedirían la inscripción de los negocios jurídicos notificados sobre varias fincas allí relacionadas, incluyendo la Finca Núm. 10,845 de Yauco. Ante esto, le solicitó al Registrador que se limitara la

presentación del asiento a las otras dos fincas, quedando excluidos los asuntos ligados a la Finca Núm. 10,845. Así se confirma que la licenciada Saliceti Maldonado conocía los problemas potenciales que enfrentaría la inscripción de la referida finca y, por ende, los problemas que confrontarían instrumentos públicos posteriores donde esta fuera objeto del negocio jurídico, como lo fue la Escritura Núm. 2 de 2020. Esta no solo guardó silencio y omitió orientar adecuadamente a las partes otorgantes de este último, sino que no llevó a cabo las acciones pertinentes para subsanar sus faltas.

La licenciada Saliceti Maldonado: (a) autorizó un negocio jurídico a sabiendas de los potenciales problemas que enfrentaría la inscripción del negocio jurídico en el Registro; (b) al presente el negocio no ha ganado acceso a los tomos del Registro Inmobiliario Digital; (c) consignó bajo su fe notarial hechos contrarios a la verdad, toda vez que el proceso de división y adjudicación hereditaria no se había finiquitado y dejó fuera del negocio a partes que debió haber sabido que eran esenciales, y (d) incurrió en serias infracciones a la *Ley Notarial*, el Reglamento Notarial y al *Código de Ética Profesional*. Por esta razón, suspendemos del ejercicio de la notaría a la licenciada Saliceti Maldonado, quien faltó al principio de la fe notarial esbozado en el Artículo 2 de la *Ley Notarial*, supra, e incumplió con sus deberes lo que, no solo afectó el tráfico jurídico de bienes inmuebles en la Isla, sino que dejó a los integrantes de estas sucesiones en estado de indefensión.

**IV**

Por los fundamentos expuestos, se decreta la suspensión inmediata e indefinida de la Lcda. Carmen T. Saliceti Maldonado de la práctica de la notaría.

La licenciada Saliceti Maldonado deberá realizar y sufragar todas las gestiones necesarias para viabilizar la inscripción de la Escritura Núm. 2 de 2020 en el Registro de la Propiedad. Se le ordena a acreditarle a este Tribunal el cumplimiento con ello dentro del término de noventa (90) días, contado a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se reinstale al ejercicio de la notaría de solicitarlo en el futuro.

Por su parte, se le ordena al Alguacil de este Tribunal a incautar inmediatamente la obra y el sello notarial de la licenciada Saliceti Maldonado y entregarlos al Director de la Oficina de Inspección de Notarías para la inspección e informe correspondiente. Además, en virtud de esta suspensión inmediata e indefinida del ejercicio de la notaría, la fianza que garantiza sus funciones notariales queda automáticamente cancelada. La fianza se considerará buena y válida por 3 años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Por último, le otorgamos un término de veinte (20) días laborables a la licenciada Saliceti Maldonado para que muestre causa por la cual este Tribunal no debe suspenderla del ejercicio de la abogacía.

Notifíquese a la licenciada Saliceti Maldonado de esta

Opinión Per Curiam y Sentencia por medio del correo electrónico registrado en el RUA y personalmente.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carmen T. Saliceti Maldonado       AB-2021-0189
    (TS-7,651)

SENTENCIA

En San Juan, Puerto Rico, a 10 de julio de 2023.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, suspendemos inmediata e indefinidamente a la Lcda. Carmen T. Saliceti Maldonado de la práctica de la notaría.

La licenciada Saliceti Maldonado deberá realizar y sufragar todas las gestiones necesarias para viabilizar la inscripción de la Escritura Núm. 2 de 2020 en el Registro de la Propiedad. Se le ordena a acreditarle a este Tribunal el cumplimiento con ello dentro del término de noventa (90) días, contado a partir de la notificación de la presente Opinión Per Curiam y Sentencia. No hacerlo pudiera conllevar que no se reinstale al ejercicio de la notaría de solicitarlo en el futuro.

Por su parte, se le ordena al Alguacil de este Tribunal a incautar inmediatamente la obra y el sello notarial de la licenciada Saliceti Maldonado y entregarlos al Director de la Oficina de Inspección de Notarías para la inspección e informe correspondiente. Además, en virtud de esta suspensión inmediata e indefinida del ejercicio de la notaría, la fianza que garantiza sus funciones notariales queda

automáticamente cancelada. La fianza se considerará buena y válida por 3 años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Por último, le otorgamos un término de veinte (20) días laborables, contado a partir de la notificación de este Resolución, a la licenciada Saliceti Maldonado para que muestre causa por la cual este Tribunal no debe suspenderla del ejercicio de la abogacía.

Notifíquese a la licenciada Saliceti Maldonado de esta Opinión Per Curiam y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico y personalmente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                                Javier O. Sepúlveda Rodríguez
                                Secretario del Tribunal Supremo