Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JAILENNE LÓPEZ VEGA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE LA FAMILIA<br><br>Recurrida | TA2025RA00306 | REVISIÓN JUDICIAL procedente de la Junta Adjudicativa, Departamento de la Familia, Región Ponce, Local Juana Díaz<br><br>Apelación núm.: 2024 PPAN 00108<br><br>Sobre: Reclamación |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

Comparece ante este tribunal apelativo, la Sra. Jailenne López Vega (señora López Vega o la recurrente) mediante el *Recurso de Revisión* de epígrafe solicitándonos que revoquemos la *Resolución* emitida y notificada por la Junta Adjudicativa del Departamento de la Familia (Junta Adjudicativa), el 28 de agosto de 2025, notificada el 4 de septiembre siguiente. Mediante esta, la Junta Adjudicativa determinó acoger el informe del Oficial Examinador y; en consecuencia, confirmar la acción tomada de Reclamación de $14,563, recibidos por la recurrente en exceso al pago que le correspondía por los beneficios del Programa de Asistencia Nutricional.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen recurrido.

**I.**

Según surge del expediente, el 16 de mayo de 2024, la Administración de Desarrollo Socioeconómico de la Familia del Departamento de Familia (ADSEF o la parte recurrida) le cursó a la

señora López Vega una misiva intitulada *Acción Tomada de Reclamación.*[1] En esta, ADSEF alegó que la recurrente adeudaba $17,705.00, por haber recibido beneficios en exceso desde abril de 2017 hasta octubre de 2023 por un error no intencionado. Por lo que citó a la señora López Vega a su Centro de Servicios Integrados el 29 de mayo de 2024.

Al respecto, llegada esa fecha, la recurrente instó una *Solicitud de Apelación* ante la Junta Adjudicativa.[2] Manifestó que, estaba en desacuerdo con la cantidad señalada, ya que no se tomó en consideración los gastos asociados a ser madre y tutora de dos niños con impedimentos, entre otros, establecidos por el Reglamento del Programa de Asistencia Nutricional (PAN). Por ello, solicitó que se realizaran cómputos reales y justos para su salario.

Así las cosas, el 13 de noviembre de 2024, ADSEF le cursó otra misiva intitulada *Citación para Interpretar una Posible Reclamación del Programa de Asistencia Nutricional (PAN).*[3] Allí, se realizó una redeterminación de la deuda, la cual se redujo a $14,563 y se citó a la señora López Vega para una vista a llevarse a cabo el 20 de noviembre siguiente.

Tras celebrada la vista, el 10 de junio de 2025, la Oficial Examinadora, Lcda. Lourdes I. Soto Pérez, presentó el *Informe del Oficial Examinador.*[4] En este, luego de haber recibido el testimonio de las partes y la prueba que obra en el expediente, consignó veintiocho (28) determinaciones de hechos. En lo aquí pertinente, transcribiremos a continuación algunas de las determinaciones de hechos:

> 20. En el contrainterrogario, a preguntas del licenciado D[í]az, la señora Jailenne López Vega expresó que si le daba el documento ADSEF-106-E cuando hacía revisión del PAN. Reconoció que el documento indica

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), Entrada núm. 1, Anejo 1.
[2] *Íd.*, anejo 3, a las págs. 2-3.
[3] *Íd.*, anejo 4.
[4] *Íd.*, anejo 2, a las págs. 5-18.

que debe notificar cualquier cambio en salario mayor a los $100.00 dentro de los próximos diez (10) días reglamentarios y que reconoce que firmó los mismos. (Cita omitida)

21. En el turno de prueba de la parte apelada, a preguntas del licenciado D[í]az, la señora Ileana Vázquez; técnica senior del Departamento de la Familia, indicó que entre sus funciones se encuentra identificar reclamaciones, evaluar los meses de reclamación e interpretación de las facturas de la misma y que ejerce dicha función desde octubre del 2015. ....

22. Sobre los ingresos de la apelante, indicó que se corroboró con la verificación de empleo y sueldo emitida por Walgreens y en la mayoría de los meses, los ingresos reportados por la apelante en sus revisiones no concuerdan con los ingresos reales por más de $100.00. Mencionó, por ejemplo, que en abril del 2017 fue notificado un salario de $701.00 y $150.00 de pensión pero que la realidad fue $876.00 de salario y $200.00 de pensión según desglose de ASUME. Tomando otro ejemplo, la señora Vázquez indicó que en mayo de 2017 fue notificado un salario de $701 y $150 de pensión cuando en la realidad lo que se corroboró fue un salario de $1,105.00 y $550.00 de una pensión. Sobre la pensión indicó que se utiliza los pagos recibidos mes por mes según el desglose de ASUME. Indicó que cuando se corrobora el ingreso con los talonarios presentados por la apelante, el salario es diferente al reportado en sus revisiones. (cita omitida)

23. La señora Ileana Vázquez continuó dando ejemplos de algunos meses correspondientes a los siguientes años donde el salario real no es el reflejado en las certificaciones de patrono ni lo reportado por razón de pensión de ASUME. Mencionó, además, que en los años donde el patrono no tenía la información de salario mes por mes, se utilizaron los talonarios enviados por la apelante y la W-2. También se utilizó el historial de pago de ASUME de los casos correspondiente a los menores. Informó que con dicha documentación se procedió a determinar en base real, mes por mes, la reclamación desde abril de 2017 a septiembre 2023. Expresó que se hizo una primera redeterminación por la cantidad de $17,705.00 y que, luego de recibir el documento de incapacidad de los menores, se logró la redeterminación por la cantidad de $14,563.00. Por último, mencionó que se le realizaron también deducciones por empleo al 100%, al 34% y por haber tenido empleo a tiempo completo, según correspondía. (Cita omitida)

24. En el contrainterrogatorio, a preguntas de la licenciada Vargas, la señora Ileana Vázquez expresó que se tomó una determinación por un error no intencionado y que un error no intencionado, conforme al reglamento del PAN, es un error de la persona encargada sin intención engañosa y que la deuda contempla de abril del 2017 a septiembre del 2023. Negó conocer si la apelante era participante del programa desde antes del 2017, pero afirmó que comenzó su investigación desde el 2016 por lo que debió entender que era participante del PAN con anterioridad a abril del 2017. Afirmó que la apelante

sigue siendo participante del PAN y que hasta la fecha de septiembre del 2024 seguía trabajando para Walgreens. Que quien ha dado las certificaciones ha sido el patrono Walgreens, que proveían la información a través de carta y que entiende fue lo que utilizó el técnico en ese momento para hacer los cálculos. Expresó que ella fue quien trabajó el caso cuando llegó a reclamación y que no es técnico de local, pero tenía el informe que emitió la local. Afirmó que no le pedían información adicional en las revisiones y tampoco le pedían talonario y que los talonarios los tienen ahora porque la apelante se los dio como parte de un proceso investigativo. Afirmó, además, que entre las deducciones que se hizo se adjudicó una incapacidad a uno de los menores a pesar de que para ese menor no aparecía la DSS-164 (ADSEF-PAN-164). En cuanto a la certificación de Walgreens del 2017 expresó que no detalla los ingresos que tuvo la apelante por mes, ya que se le dio anual. Para el 2018, la certificación de Walgreens tiene un ingreso anual, pero no por mes. Para el 2019, la certificación de Walgreens sí estableció un ingreso mensual. Afirmó que, según el informe de apelación, se le asignó un ingreso aproximado de $2,380.00, al menor J.J.S.L. $357.00 de pensión, al menor F.J.S.L. $50.00 de pensión y al menor J.S.S.L. de $50.00; se llegó a ese número por los desgloses de ASUME. Negó conocer la deuda que tiene en ASUME, pero conoce que se presentó documentación correspondiente a la deuda. Indicó que pudo corroborar que la participante genera ingresos mayores al reportado por Walgreens e indicó que con los ingresos generan una tabla que se incluye para los beneficios, pero que también genera reclamación. (Cita omitida)

25. Utilizando una de las certificaciones de patrono, específicamente el Exhibit IV de la parte apelante, la licenciada le solicitó a la señora Velázquez que calculara el ingreso mensual, conforme a ese documento. Este arrojó un ingreso mensual de $2,981.00, siendo mayor al ingreso asignado en el informe de apelación. La señora Velázquez afirmó que el técnico asignado en ese momento pudo hacerlo ya que se le presentó la evidencia. Expresó, además, que tuvieron acceso a todas las certificaciones de ASUME, Aclaró que el reglamento establece que cuando no hay veracidad de los documentos, pueden solicitarse documentos adicionales. También indicó que el reglamento dice que cuando hay cambio de ingreso, debe reportarse dicho ingreso en los diez (10) días reglamentarios, pero que es incorrecto que una persona con un empleo variante tenga que ir todos los meses a reportar ingresos. (Cita omitida)

En virtud de ello y el derecho aplicable, determinó que la recurrente no notificó oportunamente los cambios en su ingreso en el tiempo reglamentario. A su vez, señaló que los documentos utilizados para determinar la cantidad de la reclamación no estuvieron en controversia en la vista celebrada, ni fueron impugnados por la señora López Vega. Por lo cual, concluyó que la

ADSEF actuó correctamente en su determinación. En consecuencia, recomendó a la Junta Adjudicativa a confirmar la *Acción Tomada de Reclamación* notificada a la recurrente.

Así las cosas, el 28 de agosto de 2025, la Junta Adjudicativa emitió una *Resolución.*[5] Mediante esta, **adoptó el informe realizado por la Oficial Examinadora el 10 de junio de 2025 y lo hizo formar parte de su dictamen**. Por ello, tras evaluar las determinaciones de hechos y conclusiones de derecho, contenidas en aludido informe, confirmó la acción que llevó a cabo la ADSEF.

Inconforme, el 16 de septiembre de 2025, la señora López Vega presentó una *Reconsideración y Solicitud de Desestimación.*[6] No obstante, la agencia no atendió la moción dentro del término establecido por ley; por lo cual, se entendió rechazada. A tales efectos, el 23 de octubre de 2025, la recurrente presentó el recurso que nos ocupa y planteó que la ADSEF incurrió en los siguientes errores:

> ERRÓ LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA EN EMITIR UNA RESOLUCIÓN A MÁS NUEVE (9) MESES DE CELEBRADA LA VISTA ADJUDICATIVA.
>
> ERRÓ LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA EN EMITIR UNA RESOLUCIÓN CONTRARIA A DERECHO, CONFIRMANDO UNA ACCION DE CIERRE NOTIFICADA POR LA ADMINISTRACIÓN DE DESARROLLO SOCIOECONÓMICO DE LA FAMILIA (ADSEF) DEL DEPARTAMENTO DE LA FAMILIA, CUANDO ESA NO ERA LA ACCIÓN TOMADA.

El 27 de octubre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 24 de noviembre de 2025 para expresarse. A su vez, el 5 de noviembre siguiente, emitimos una *Resolución* ordenándole a la agencia que elevara el expediente administrativo. En cumplimiento con lo ordenado, el 13 y el 24 de noviembre, la parte recurrida cumplió con las resoluciones emitidas

---

[5] *Íd.*, a las págs. 1-4.
[6] *Íd.*, anejo 7.

por este tribunal. Así, nos damos por cumplidos y, a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.
### Revisión judicial de las decisiones administrativas

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Buxó Santiago v. ELA et. als.*, 2024 TSPR 130, 215 DPR ___ (2024). *Specialty et al. II.*, 179 DPR 923, 940 (2010).[7]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder cuando: (1) la misma no esté basada en evidencia sustancial; (2) la agencia erró en la aplicación o interpretación de las leyes y el reglamento; (3) su actuación resulte ser una arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que

---

[7] Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003); *Transp. Sonell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024).

las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias,* 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota,* 163 DPR 716, 728 (2005). En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota,* supra, a la pág. 729.

Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 616 (2006), citando a *Otero v. Toyota,* supra.

**Los términos jurisdiccionales, de estricto cumplimiento y directivos**

En nuestro ordenamiento jurídico, determinadas acciones tienen que efectuarse dentro de un término establecido. *Rosario Domínguez et als., v. ELA et al.,* 198 DPR 197 (2017). Como regla general, los términos provistos por las leyes y reglas procesales son para que las partes actúen en determinado plazo y las consecuencias de la inacción varían con frecuencia. *Pueblo v. Mojica Cruz,* 115 DPR 569, 574 (1984). Un término es un plazo de tiempo establecido por ley para la realización de actos procesales y cuyo incumplimiento con lleva alguna sanción o consecuencia. *BBV v. ELA,* 180 DPR 681, 688 (2011). Estos plazos procesales se dividen en varias categorías, por ejemplo, existen los términos jurisdiccionales, los de estricto cumplimiento, los directivos y los discrecionales. *Rivera Marcucci et al. v. Suiza Dairy,* 196 DPR 157, 170 (2016).

Los términos jurisdiccionales son aquellos plazos fatales que no admiten interrupción ni prorroga, siendo insubsanables. Su incumplimiento despoja de jurisdicción al foro adjudicativo. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97-98 (2008). La falta de jurisdicción conlleva la desestimación de la reclamación sin

considerar los méritos de la controversia, pues, los tribunales ni las agencias pueden asumir jurisdicción donde no la tienen. *Suffront v. AAA*, 164 DPR 663, 674 (2005) Para que un término se considere de naturaleza jurisdiccional, ello tiene que surgir expresamente de la ley o que la ley presenta indubitadamente que esa fue la intención legislativa. *Rosario Domínguez et als. v. ELA et al.,* supra, a la pág. 209.

Los términos de cumplimiento estricto son aquellos que no son fatales y, por lo tanto, pueden ser prorrogados por justa causa. *Íd.*, a la pág. 210. El requisito de justa causa no se cumple con vaguedades, excusas, o planteamientos estereotipados. Será necesario que la parte que alega su existencia provea explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales. *Arriaga v. FSE,* 145 DPR 122, 132 (1998).

Por otro lado, se consideran términos directivos aquellos términos cronológicos establecidos en la ley, pero que no se les ha catalogado como jurisdiccionales o de estricto cumplimiento. *In re Godinez Morales,* 161 DPR 219, 237 (2004). El incumplimiento con el término directivo no constituye un defecto fatal que incida sobre la jurisdicción del organismo adjudicativo. Sin embargo, la obligación de las agencias de cumplir con dichos términos es de cumplimiento estricto. *Lab. Inst. Med. Ava. v. Lab. C. Boriquen,* 149 DPR 121, 136 (1999). La ampliación de dichos términos solo ocurrirá en circunstancias excepcionales o por renuncia de las partes. *Íd. E*l remedio judicial que tiene disponible la parte afectada cuando la agencia incumple con su obligación dentro del plazo directivo, es la presentación de un *mandamus* ante el foro judicial o una moción de desestimación ante la agencia concernida, antes de

que su reclamación se torne académica. *Íd.*[8]

### III.

La recurrente esbozó que la Junta Adjudicativa erró en emitir una *Resolución,* a más de nueve (9) meses de celebrada la vista, en contravención al derecho establecido y el debido proceso de ley. Además, señaló que el informe fue presentado luego de haber transcurrido seis (6) meses, cuando este debió haberse realizado dentro de los treinta (30) días siguientes a la celebración de la vista. Por otra parte, manifestó que la Junta Adjudicativa erró en su *Resolución* al confirmar una acción de cierre cuando esta no era la acción tomada por la ADSEF.

Primeramente, advertimos que la Sección 3.14 de la LPAUG, 3 LPRA sec. 9654, establece que:

> Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.

En el caso ante nuestra consideración, la Junta Adjudicativa demoró en emitir su dictamen en contravención con el término señalado en la aludida sección. No obstante, el Tribunal Supremo ha resuelto que, ante el incumplimiento de una agencia con el plazo establecido, la parte tiene disponible como remedio "la presentación de un *mandamus* ante el foro judicial o una moción de desestimación ante la agencia concernida". *U.P.R. Aguadilla v. Lorenzo Hernández,* 184 DPR 1001, 1009-1010 (2012); *J. Exam. Tec. Méd. v. Elías et al.,* 144 DPR 483, 495 (1997). A tales efectos, son remedios que están disponibles previo a la adjudicación de la controversia. Es harto conocido, y norma reiterada, que el incumplimiento del término directivo por parte de una agencia no le

---

[8] Véase, también, *U.P.R. Aguadilla v. Lorenzo Hernández,* 184 DPR 1001, 1009-1010 (2012); *J. Exam. Tec. Méd. v. Elías et al.,* 144 DPR 483, 495 (1997).

priva de jurisdicción. *Benítez Nieves v. ELA et al.*, 202 DPR 818, 832 (2019).

Por lo tanto, colegimos que la agencia no incurrió en el primer error señalado, toda vez que conservaba jurisdicción para atender la controversia.

En cuanto el segundo señalamiento, es preciso señalar que la Oficial Examinadora recomendó lo siguiente:

> POR TODO LO CUAL, **se recomienda a la Junta Adjudicativa la siguiente decisión: CONFIRMAR la Acción Tomada de Reclamación notificada a la parte apelante** por la Administración de Desarrollo Socioeconómico de la Familia (ADSEF) del Departamento de la Familia, Oficina Regional de Ponce.[9] (Enfasis nuestro)

Sin embargo, la Junta Adjudicativa en su dictamen resolvió que:

> **A la luz de las determinaciones de hechos y conclusiones de derecho contenidas en el Informe de la Oficial Examinadora, y luego de analizar sus recomendaciones conjuntamente con el expediente de esta apelación**, los miembros de la Junta Adjudicativa que aquí suscribimos resolvemos: **Se CONFIRMA la Acción de cierre notificada a la parte apelante** por la Administración de Desarrollo Socioeconómico de la Familia (ADSEF) del Departamento de la Familia, Oficina Regional de Ponce. Archívese.[10] (Énfasis nuestro)

Ahora bien, en su escrito en oposición, la agencia admite que se debe a un error mecanográfico y; en consecuencia, arguye que este no afecta la "sustancia" de la decisión ni justifica que se deje sin efecto la determinación en controversia. Ante esto, razonó que es evidente que lo que se confirmó fue la Acción de Reclamación de Beneficios del PAN recibidos en exceso, tras acoger en su totalidad el informe del Oficial Examinador.[11]

En nuestro ordenamiento jurídico, un error administrativo no crea un estado de derecho que obligue a una agencia ni impida su corrección. *Rivera Padilla v. OAT*, 189 DPR 315, 345 (2013);

---

[9] SUMAC TA, Entrada núm. 1, anejo 2, a la pág. 18.
[10] *Íd.*, a la pág. 1.
[11] SUMAC TA, Entrada núm. 7, a la pág. 18.

*González v. ELA*, 167 DPR 400, 413 (2006). Por ello, una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal para beneficiarse de esta. *Magriz v. Empresas Nativas, Inc.*, 143 DPR 63, 71 (1997).

Así pues, no cabe duda de que el error en el dictamen no creó un estado de derecho que afecte la decisión arribada por la agencia, ni impide su corrección. Esto, en especial, cuando en la *Resolución* recurrida, la Junta Adjudicativa claramente advirtió que **adoptó el informe realizado por la Oficial Examinadora y lo hizo formar parte de su dictamen**. Por ende, al acoger las determinaciones de hechos y de derecho plasmadas en el referido informe, resulta fácil entender que el ente gubernamental resolvió la Acción de Reclamación de Beneficios del PAN recibidos en exceso por la señora López Vega y no otro asunto, aunque así se haya identificado incorrectamente en la determinación objetada. En este sentido, no podemos avalar la pretensión de la recurrente al argüir que por dicha equivocación nos encontramos ante un dictamen totalmente erróneo en derecho. Esto, máxime cuando la propia recurrente sometió la apelación para refutar la reclamación de la deuda por beneficios en exceso y participó de la vista.

Además, en la *Reconsideración y Solicitud de Desestimación* instada ante la Junta Adjudicativa esta expresó que "[e]n el presente caso no se emitió un Cierre que requiera su confirmación. De hecho, la parte apelante actualmente cualifica y continúa recibiendo los beneficios del PAN." Por lo que, dicha inexactitud no ha provocado un perjuicio sustancial en su contra que amerite un acto afirmativo inmediato de la agencia para corregir el dictamen cuestionado.

Por último, no podemos obviar que la recurrente no cuestiona, en el recurso de epígrafe, las determinaciones de hechos, las conclusiones de derecho y las recomendaciones esbozadas por la Oficial Examinadora en el antedicho informe que, como explicamos,

fue acogido y adoptado en su totalidad por la Junta Adjudicativa en la *Resolución* impugnada.

En fin, resolvemos que los errores señalados no fueron cometidos.

**IV.**

Por los fundamentos anteriormente expuestos, procedemos a confirmar la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones